In the Matter of the Application of EDITH EMILY KOHLER for the Dissolution of Her Marriage with WALTER FRANK KOHLER.

Supreme Court, Monroe County, June 11, 1924.

**Husband and wife — proceeding to dissolve marriage under Domestic Relations Law, § 7-a — jurisdiction — Civil Practice Act, § 1146-a, requires party married without state to have been resident of state for one year at commencement of proceeding — application denied for want of jurisdiction.**

Under section 1146-a of the Civil Practice Act the court has no jurisdiction of a proceeding to annul a marriage unless the plaintiff is a resident of the state when the action is commenced and unless the parties have been residents of the state for at least one year if they were married without the state.

Accordingly, the plaintiff's application for the dissolution of her marriage pursuant to section 7-a of the Domestic Relations Law should be denied where it appears that the parties were not married in the state of New York, had at no time a matrimonial domicile in said state, and where it does not appear that the plaintiff was a resident of the state at the time the proceeding was commenced.

PROCEEDING under section 7-a of the Domestic Relations Law for dissolution of a marriage.

*Forrest K. Moreland,* for the petitioner.

STEPHENS, J. This proceeding was instituted under the provisions of section 7-a of the Domestic Relations Law by a petition verified November 26, 1923. The petitioner alleged that she was a resident of the city of Rochester, Monroe county, N. Y.; that she was married to the man named therein as her husband, and was afterward deserted by him. Neither the place of the marriage nor of the alleged desertion was given.

It appeared at the hearing that the petitioner was married to her absent spouse in Boston, Mass., December 17, 1908; that, after the marriage, she and her husband, who were theatrical folk, traveled in the pursuit of their vocation in the state of New York and presumably elsewhere. The petitioner testified that she lived with her husband in Rochester, Hamilton and Brockville, the two last-named places being in Canada, and that she had been, off and on, in Rochester for the last ten or eleven years altogether; that her husband left her November seventeenth, eight years ago; that " we just closed from a show over in New York state and I went to Brockville on a visit and some friends of mine was sick and he sent me a postal card there and that was the last I heard or seen of him, and that was eight years ago; * * * I just forget

the town but I know somewheres in New York state because he went from there to Winnipeg, Manitoba, and that is where he wrote the post card, and that was the last I heard of him." She testified that she lived at the time of the hearing at 34 Ward street in Rochester and had lived there about seven months altogether; that before that she was over in Hamilton visiting friends about five or six months and before that in Brockville for quite a little while, about seven or eight weeks; and before that, out on the road traveling from one place to another all through New York and Pennsylvania.

In support of her application upon the first hearing, two witnesses were produced, both of whom were residents of Canada, one of Hamilton and the other of Brockville.

Though the venue of the proceeding was laid in the county of Monroe, the petition was verified in Niagara Falls, Niagara county, and the petitioner's attorney resides and has his office in Ogdensburg, N. Y., both places being just over the border from Canada.

After the minutes of the testimony, given at the hearing, had been transcribed, the court, in a letter to the plaintiff's attorney, expressed a doubt whether the petitioner was entitled to the relief that she sought if for no other reason than because she had not established her present residence in the state of New York, and offering to hear further proof upon that branch of the inquiry. Thereafter, on the day designated by the court, the petitioner appeared without her counsel, with two witnesses, and further testimony was taken.

In reply to questions by the court the petitioner then testified that she and Mrs. Carl and the latter's family moved from 30 Lowell street to 34 Ward street about ten months ago; that she was a servant who had not been employed for the last six months, her last employment being in a restaurant on Ford street for about two months and before that at the Royal Hotel in Hamilton for about six months; before that she had gone to Detroit, was there for a while, in Hamilton for a while, and came from Ogdensburg to Rochester in July some time in 1923, going to 30 Lowell street to live, where she remained about five months before moving to 34 Ward street. One of the witnesses testified that he had known the petitioner in Brockville, and knew that she had been in Rochester since the first of August, having met her at Lowell street and that a year ago he saw her in Brockville, Ont. This witness is a painter employed at Rochester who had known the petitioner for many years over in Canada where he had been a resident. The second of the two witnesses offered by the petitioner was a woman whose acquaintance with the petitioner began seven months before, through the

circumstance that both were on the street looking in the same store window at the same time. By reason of inexpert questioning by the court, the frequency of their association after the initial meeting was not very clearly developed, but we will assume that they met not infrequently at the home of the witness. This witness gave the name of Eddy. While testifying she said she was married to one Granger and when asked why her name was not Granger said, "it is but it is my mistake." No satisfactory explanation, therefore, was given why this witness gave a name other than that of her husband; it may have no other effect than to conceal the identity of the witness for whatever purpose the non-disclosure of the real name would serve. The significant thing, however, is not so much the confusion in dates and places of residence as the failure, after the opportunity was given to the petitioner, to fortify the fact of her residence in Rochester, to call any member of the Carl family, with whom she had been living, or any of the neighbors who would certainly have known of her presence in the neighborhood, or a tradesman from whom she had bought supplies, or the postman, and that she placed her sole dependence in the testimony of a chance acquaintance whose dependibility was not established and in that of another witness who, though entirely worthy of credit, had known the petitioner for the longer period of his knowledge of her in Canada and for about seven months in the city of Rochester.

To summarize, the parties were married in Massachusetts; there was no matrimonial domicile in the state of New York; there is ground for a genuine doubt whether the separation was accomplished by the husband's abandonment of the petitioner within the meaning of the statute, and the testimony is blurred as to whether, if there were an abandonment, it occurred in this state.

In each of the three forms of action permitted by statute to weaken or entirely destroy matrimonial bonds (Civ. Prac. Act, §§ 1146-a, 1147, 1162) the court has no jurisdiction unless the plaintiff is a resident of the state when the action is commenced, and where the parties were married without the state, unless they have been residents of the state for at least a year, except that actions for absolute divorce may be maintained where both parties were residents of the state when the offense was committed or where the parties were married within the state.

The conditions, therefore, do not exist that would have entitled the petitioner to have instituted any other proceeding affecting her marriage contract.

The statute under which this proceeding was instituted does not in terms deny its remedial application to marriages contracted in another state, not followed by matrimonial domicile here, nor to

persons not resident in the state of New York when the desertion occurs, or when the proceeding is commenced; but, on the other hand, it is not at all probable that it was the legislative intent to make our courts an open forum for the dissolution of marriages wherever contracted between parties wherever resident, because of the absence of one party to the contract from a place wherever situated, on the application of the other wherever dwelling.

The application is denied upon the grounds that the parties were not married in the state of New York, had at no time a matrimonial domicile in said state, and it not having been made to appear that the petitioner was a resident of the state at the time the proceeding was instituted.

Ordered accordingly.